JULIAN ROBERTSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4187. Promulgated May 14, 1946.

*W. H. Holderness, Esq.*, for the petitioner.
*Elmer L. Corbin, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: The Commissioner, in determining the deficiency herein, included in taxable income the amount of $12,500 designated as "Bonus" and determined that such amount represented taxable income to petitioner for the year 1941. On brief, he relies on *Richard R. Deupree*, 1 T. C. 113; *Renton K. Brodie*, 1 T. C. 275; *D. D. Hubbell*. 3 T. C. 626; affd., 150 Fed. (2d) 516; and *David Watson Anderson*. 5 T. C. 1317.

The petitioner does not rely upon section 165 of the Internal Revenue Code, but contends that the amount of $12,500 paid to the trustee is not taxable to petitioner because he did not actually or constructively receive that amount in 1941.

The question is, was "any economic or financial benefit conferred on the employee [petitioner] as compensation" in the taxable year 1941? *Commissioner* v. *Smith*, 324 U. S. 177. The employment contract provided that petitioner should receive "as compensation for his services, an annual salary and commission at a rate of commission not less than that in effect on September 1, 1941," and "in addition to any other compensation" received by him, "the aggregate sum of $12,500 in each year" was to be paid to the American Trust Co., trustee under the trust agreement of November 13, 1941. Undoubtedly the $12,500 was intended and was paid to the trustee as compensation for services rendered by petitioner. Hence, were it not for other provisions in the employment and trust agreements, the principle of the cases cited by the respondent would be applicable and controlling. The employment contract contained the following provision:

(d) If Robertson of his own volition ceases to be an employee of Corporation prior to the expiration of this Agreement for any reason or cause other than (a) his death, or (b) his physical incapacity, or (c) the severance or loss of effective control of Corporation by both Milton S. Erlanger and Sidney C. Erlanger as (a), (b) and (c) have been hereinbefore defined, or if for proper cause or reason he be discharged by corporation prior to the expiration of this Agreement, then this Agreement shall forthwith terminate and Robertson's and his family's rights and interests under said Trust Agreement shall be null and void and of no effect as provided in said Trust Agreement.

The trust agreement contained a similar clause, to which was added:

* * * Trustee shall thereupon convert the retirement income contracts and all other investments into cash and deliver such cash to the Trustee under such other trust, or trusts, as shall be hereafter created for the benefit of other employees of Corporation and/or its subsidiary and/or its allied corporations.

The amount so converted shall be distributed for the benefit of such of the employees as the Pension Committee of Corporation may direct.

Whether or not petitioner or his family will ever receive or be entitled to the economic benefits conferred by the employment and trust agreements depends, except in the event of his death, physical incapacity, discharge without proper cause, or severance or loss of effective control by the Erlangers of the corporation, upon petitioner's continuation in his employment until the expiration of the extended term of employment, September 1, 1949. It is clear that the motivating reason for the execution of the employment and trust agreements was to induce petitioner to remain in his employment with the companies. If he ceased to be an employee of his own volition of the corporation or if he was discharged for proper cause or reason prior to the expiration of the designated term of employment, he and his family would lose all rights or interests in the trust estate.

In *Cecil Q. Adams*, 20 B. T. A. 243; affd., 54 Fed. (2d) 228, it was stated that "in general, income should not be construed to have been received prior to the date of actual receipt except where a taxpayer turns his back upon income or does not choose to receive income which he could have if he chose," and in *C. E. Gullett*, 31 B. T. A. 1067:

* * * that amounts due from a corporation but unpaid, are not to be included in the income of an individual reporting his income on a cash receipts basis unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice. * * *

See also, *Adolph Zukor*, 33 B. T. A. 324; *K. R. Kingsbury*, 31 B. T. A. 1126. Cf. *A. P. Giannini*, 42 B. T. A. 546; affd., 129 Fed. (2d) 638; *J. H. McEwen*, 6 T. C. 1018.

The respondent argues that the conditions which would nullify the agreements are at petitioner's own volition or his own conduct in the discharge of his duties; in other words, "he may take it or leave it." A similar argument was made in *Schaefer* v. *Bowers*, 50 Fed. (2d) 689; certiorari denied, 284 U. S. 668, wherein the Circuit Court of Appeals for the Second Circuit stated:

Moreover, even if it can be thought that any discharge is voluntary, still his rights changed upon distribution. Until then, his interest was charged with the obligation to remain; that is as true a condition as though his employment did not rest in his pleasure. Practically it might prove onerous; he might find it much to his advantage to go elsewhere, but his decision to do so was clogged by the fact that he would lose his shares. Certainly he had not that untrammelled dominion over property so limited which he has over property in general. An executory limitation is none the less a condition because performance rests with the grantee. * * *

The agreements clearly indicate the intent of the corporation that any benefits which petitioner or his family could derive from the agreements should be dependent upon petitioner's continuation in his

employment. Petitioner's right to receive the agreed economic benefits was restricted. His interest was "charged with the obligation to remain" in the employment during the designated term.

The doctrine enunciated in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, as follows:

* * * If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, * * * even though he may still be adjudged liable to restore its equivalent. * * *

is not applicable, as claimed by respondent. In that case, among properties operated by taxpayer in 1916 was a section of oil land, title to which stood in the name of the United States. The Government, claiming beneficial ownership also, brought suit to oust taxpayer from possession. A receiver was appointed in February 1916. After entry of the final decree in 1917 by the District Court dismissing the bill, the receiver paid over the 1916 net profits from such section of oil land to the taxpayer. The Government took an appeal to the Circuit Court of Appeals, which affirmed the decree of the District Court in 1920. A further appeal was dismissed by stipulation in 1922. The Supreme Court held that the 1916 earnings were taxable income to the taxpayer in 1917, as determined by the Commissioner, and not in 1916 or in 1922, as contended by taxpayer. Herein the petitioner did not actually and unconditionally receive the $12,500 in 1941. Distribution to him or his family by the trustee was restricted and depended upon a condition, which if not complied with, would nullify any rights or interests which he or his family might have had in the trust fund.

It is our conclusion that the amount of $12,500 paid to the trustee in 1941 was not taxable income to the petitioner in that year under section 22 (a).

Since in determining the deficiency another adjustment was made by the Commissioner, which is not in controversy,

*Decision will be entered under Rule 50.*