### No. 10586.

Circuit Court of Appeals, Sixth Circuit.

June 2, 1948.

Chas. L. Claunch, of Chattanooga Tenn. (Albert W. Taber and Charles L. Claunch, both of Chattanooga, Tenn., on the brief), for petitioner.

I. Henry Kutz, of Washington, D. C., (Theron Lamar Caudle, Sewall Key, George A. Stinson and Harry Baum, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, MARTIN, and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The Tax Court found that, during the three-year period for which income tax deficiencies were assessed and prior thereto, the petitioner, W. B. Woosley, and his wife have been partners in conducting the business and earning the income of Woosley Knitting Mills within the meaning of applicable revenue laws, but, taxwise, not to the extent claimed by the petitioner. Although a part of the capital contributed by the wife to the partnership originated with her and although she contributed managerial and vital additional services, the Tax Court held that the major portion of the income accruing to the wife from the partnership was allocable and taxable to the petitioner for the years embraced herein, 1938, 1939, and 1940.

We shall confine this opinion to a general summary of the salient facts and to a discussion of controlling legal principles.

The petitioner and his wife were married in 1926. Shortly after their marriage, she accompanied him to Pennsylvania and Kentucky, where he worked in hosiery mills to acquire knowledge of manufacturing women's hose. In 1927, he engaged in hosiery manufacture in Shelbyville, Tennessee, under the name of "Woosley Knitting Mills," in partnership with his father, who died in 1935. After his father's death, petitioner continued operation of the business as sole proprietor until January 2, 1937, when he entered into a partnership agreement in writing with his wife, in her individual capacity and also as trustee for their two children for a very small interest, and with two others, R. M. Thomas and Hans Roessler. The trusteeship issue, correctly resolved by the Tax Court, is not involved on this review.

The taxpayer agreed to put in all the assets and liabilities of his individually owned business and that his interest in the partnership would be 119/150ths. The net worth of the business turned over to the partnership by him, as reflected by his ledger accounts, was $141,179.58. His wife agreed to put in $8,877.50, which "Woosley Knitting Mills now has borrowed from her", her husband agreeing to give her a $5,000 interest to make her total interest $14,000, after $112.50 had been deducted from her 1937 salary. Her interest in the partnership would thereby be 14/150ths.

Thomas agreed to put in $5,000, for which he would receive a 5/150th's interest; and Roessler would contribute $15,000, for which he would receive 10/150ths' interest. The contract recited that the partners should share "in all profits & losses of the partnership according to their respective interests." For their capital contributions, Thomas and Roessler executed their respective promissory notes, which Woosley guaranteed at a Chattanooga Bank that loaned them the money. Both Thomas and Roessler had been employed by the mill in 1929. After a year in the mill, Thomas served as salesman until 1935, when he abandoned the road and returned to Shelbyville to assume charge of bookkeeping and sales. Roessler, a skilled mechanic, was superintendent of the knitting room and had supervision of the machinery and equipment.

On May 26, 1937, a new partnership agreement was executed by the same parties, amplifying and superseding the agreement of January 2nd of the same year. Under its terms, the taxpayer, "as manager and executive head" of the business, was to receive an annual salary of $7,200. The salaries of the other partners were fixed at $2,400 each for the taxpayer's wife and Thomas, and $5,720 for Roessler. It was provided that the partners were to share in the profits and losses after these salaries were deducted from the income resulting from the partnership's operations. The same individual interests were retained by the partners.

The petitioner, his wife, and Thomas became dissatisfied with Roessler's actions; and, on December 30, 1939, the petitioner purchased the superintendent's entire one-fifteenth interest in the partnership for $21,667. On December 30, 1939, petitioner sold to his wife an undivided one-third interest in the partnership, for which she delivered her promissory note for $60,000, payable on or before ten years from date and secured by 64/150ths interest in the business, it being specified that the note might be paid in instalments of not less than $100 each at any time before maturity. On the same date, a new partnership agreement was executed.

This agreement recited that the partnership interest of the petitioner was 79/150ths; that of his wife, 64/150ths; that of Thomas, 1/30th; and that of the trusts for the children, 2/150ths. In all other respects, the existing agreement of May 26, 1937, was confirmed. Demand notes were issued to petitioner's wife for her salary and these notes were paid by checks deposited from time to time to her personal account. This account was drawn upon by her to pay household expenses; and, at the end of each year, the taxpayer gave her his personal demand note for the total amount so expended by her. At the end of 1939, Mrs. Woosley held three of these demand notes aggregating the sum of $5,440. She also held three more of her husband's demand notes, totalling $14,000, which he had given her as Christmas presents in 1937, 1938, and 1939. On December 30, 1939, the date of the new partnership agreement, she surrendered all six notes which were credited as payments on the $60,000 note given by her for the purchase of the one-third interest in the partnership. She received further credits on the $60,000 demand note for the surrender on December 31, 1940, of notes aggregating $3,380 issued to her for repayment of household expenses and for payment of her 1940 salary; and, on that same date, her note was credited with $7,480 for surrender of a note for $10,800 given her as a distribution of partnership profits. On September 1, 1941, Mrs. Woosley's note to the partnership was credited with $25,230 upon surrender by her of the partnership's note for $38,400, dated simultaneously, given her in distribution of partnership profits. Interest of $1,759.73 was also credited to her. From June through November, 1940, she received total credits on her note of $570 as payments from rentals from real estate owned by her; and, on December 16, 1940, she was credited with $3,900 as a payment made by her, by check. Thus, total payments, principal and interest, of $61,759.73 were credited to the payment of her $60,000 promissory note, which was marked cancelled and paid in full as of September 1, 1941.

Mrs. Woosley testified that she had not worked prior to her marriage, but that

when the mill operation was started in 1927 she was for several years the only person who worked in the office; that she supervised the payrolls and timekeeping; and that she received no compensation for her services prior to the formation of the partnership in 1937. Her testimony was uncontroverted.

The Tax Court found that, since 1931, Mrs. Woosley has regularly supervised the preparation of the payrolls of the Woosley Knitting Mills, has signed all payroll checks, and has worked in the stock room directing the grading, folding, packing and labeling of hose; and that she received no compensation for her services prior to formation of the partnership.

The tax tribunal specifically found: "Since the formation of the partnership on January 2, 1937, Mrs. Woosley has been active in the conduct of its business. In addition to supervising payrolls and working in the stock room she has transacted business for the partnership at the bank. She had authority to, and did, sign checks of the partnership for payrolls and for current expenses of the business. She at all times participated in conferences between the partners involving the policy to be pursued by the business and other important business matters, including personnel problems and purchases of machinery and equipment. She participated in the discussions relating to retirement of Roessler from the partnership and the continuation of the partnership by the other partners. When the petitioner and Thomas were absent, she directed the operation of the business. Both before, as well as after January 2, 1937, she had the responsibility of 'styling' hose. This 'styling' involved the making of changes in the shape of the sole and various changes in other parts of the stocking, the selection of appropriate colors, and the determination of the quality of hose to be manufactured, all of which is necessary in the hosiery manufacturing business to keep the product in line with changing fashions in women's shoes and clothing. The petitioner and Thomas relied upon her judgment and experience in styling. When the business was first started, Mrs. Woosley's duties did not take up all of her time. She usually spent about half of her time at the office and plant, but, as the business expanded, her duties gradually consumed more and more of her time. During the taxable years she did not report at the opening hour with the other partners, but she went to the office regularly every day and actively engaged in the performance of her duties. She was absent for the entire day on but few occasions."

The Tax Court added that "the services performed and the responsibilities assumed by Mrs. Woosley during the years 1937 to 1940 were reasonably worth the annual salary of $2,400 which she received from the partnership in those years." In its opinion, the Tax Court concluded that "Mrs. Woosley in receiving the $2,400 salary was fully compensated for all services performed by her for the partnership"; and that "the only income involved in the issue here raised is that portion attributable to the capital contributions of the partners."

In our view, this was a plain mis-step in reasoning, in that the Tax Court ignored the fact that Mrs. Woosley was a bona fide partner, according to its own findings. There is no showing whatever that either tax avoidance or tax evasion was the motivation for the formation of the partnership. The wife contributed, not only some capital originating with her; but, more importantly, she contributed managerial and vital additional services to the conduct of the partnership.

The partnership agreement did not provide, as the tax tribunal inferred, that the profits of the partnership were to be divided in proportion to the capital contributions of the partners. The sharing of profits and losses, according to the express provision of the agreement of May 26, 1937, which was continued and confirmed by the last agreement of December 30, 1939, was to be in proportion to the interest of each of the partners in the partnership. The percentage of each partner's interest was specified in the agreement. The fixed salary allowances were to be "charged against the income of the partnership operations before any apportionment of annual profits or losses" was made; and

the salary allowances could be changed from time to time by agreement of the majority of the partners. It is obvious that the parties did not contemplate compensating themselves in full by the payment of salaries, but that each expected to receive, in addition to his or her salary, the specified division of profits. There is no stronger reason for presuming that Mrs. Woosley was compensated in full by her salary than for making a similar assumption as to her husband and Thomas.

The contribution to the partnership of managerial services by the respective partners, as well as the contribution of capital, produced the partnership income. There seems no justifiable reason for treating Mrs. Woosley's contribution of services on a different basis from like contributions by the petitioner and Thomas. That a division of the partnership profits on the basis of capital contributions was not contemplated is derivable from the fact that, while the capital contributed by Thomas was $5,000 and his partnership interest 1/30th, the capital contribution of Roessler was $15,000 and his partnership interest in the profits was only 1/15th, a lesser proportion for his money contribution to the firm than the proportion received by Thomas.

In our judgment, the Tax Court clearly erred as a matter of law in attributing to the capital contributions all the income earned by the partnership and in making the allocation which it did contrary to the express provisions of the articles of partnership. Situations may be presented in which the Tax Court might properly make allocations of income in husband and wife partnership cases; but, on its facts, this case is not one of that kind. Here, we find no valid reason for dealing with the partnership income otherwise than as provided for in the partnership agreement.

We think the opinions in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 538, 90 L.Ed. 670, 164 A.L.R. 1135, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, do not gainsay, but, on the contrary, supply authority for the conclusions which we have reached. Moreover, no one of our long line of decisions on the subject matter of family partnerships, several of which are cited in the brief of the Commissioner, is inconsistent with our determination of the present controversy. There is a marked variance in the facts presented here from any situation in which, in our adjudications, we have held a husband and wife partnership ineffective for the division of the partnership income between husband and wife for tax purposes.

Here, the Tax Court found from the evidence that Woosley and his wife intended to transact business as a partnership and actually effectuated that purpose. The wife actively participated in the control and management of the partnership operations, performed vital additional services, and also, insofar as the record shows, invested in the partnership capital originating with her, although she received a larger proportionate interest in the partnership than was represented by such capital contribution.

The Supreme Court, in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, found the facts sufficient to support the findings of the Tax Court that no genuine partnership between the taxpayer and his wife existed or was ever intended within the meaning of sections 181 and 182 of Title 26 U.S.C.A. Int.Rev.Code; and that the husband had earned the income and should be taxed on it under section 22(a) of Title 26 U.S.C.A. Int.Rev.Code. The decision rested upon the basis that findings of fact by the Tax Court, when supported by evidence, are final. The facts of the Tower case have been so frequently discussed by the courts that we shall not indulge in repetition. There, the wife contributed to the partnership neither managerial services nor capital originating with her. After entering into the partnership with his wife, "the husband continued to control and manage the business exactly as he had before." His wife did not participate in its management or operation.

From the language of the Supreme Court in the Tower case, it is manifest that the distribution of partnership profits between petitioner Woosley and his wife, according to their partnership agreement, is lawfully permissible for tax purposes. The opinion

334

stated: "The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot be decided simply by looking at a single step in a complicated transaction. To decide who worked for, otherwise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. * * * There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C., §§ 181, 182, 26 U.S.C.A.Int.Rev.Code, §§ 181, 182." 327 U.S. 289, 290, 66 S.Ct. 537, 90 L.Ed. 670, 164 A.L.R. 1135.

In Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, the Supreme Court upheld the Tax Court's finding that, on the evidence, the wife was not a genuine partner. There, the husband, confronted with prospective large profits and consequential heavy income taxes, consulted with his accountant and attorney and worked out a plan for a husband and wife partnership. He furnished her the money in part and accepted her notes in part for a one-half interest in a retail furniture business which he had long owned and operated. It is obvious that no bona fide partnership intent existed, the partnership arrangements being merely superficial and resulting in no change in the husband's economic interest in his business. He retained full control of its management after the partnership was formed, and did not even permit his wife to draw checks on the business bank account. He filed social security tax returns as owner of the business. The case bears no similarity to the case at bar.

Each tax case involving family partnerships must be decided upon its own facts with faithful adherence to the pronouncements of the highest authority. We considered that we had so conformed when we reversed decisions of the Tax Court

against the validity for income tax purposes of family partnership agreements in two recent cases, in which the Commissioner of Internal Revenue stood upon stronger ground than he does here. Weizer v. Commissioner, 6 Cir., 165 F.2d 772 (C.C.A.6); Lawton v. Commissioner, 6 Cir., 164 F.2d 380.

The decision of the Tax Court is reversed, and the cause is remanded to that tribunal for recomputation of the taxes in conformity with this opinion.