### CANFIELD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10555.

Circuit Court of Appeals, Sixth Circuit.

July 12, 1948.

---

R. M. O'Hara, of Detroit, Mich. (R. M. O'Hara and William F. Robinson, both of Detroit, Mich., on the brief), for petitioner.

I. Henry Kutz, of Washington, D. C. (Theron L. Caudle, Sewall Key, George A. Stinson, Maryhelen Wigle and I. Henry Kutz, all of Washington, D. C., on the brief), for respondent.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

On this petition for review, the taxpayer insists that the Tax Court erred in deciding that there is a deficiency due in his income tax for 1941 in the amount of $4,121.06, or in any other amount. The case presents the issue whether a husband and wife partnership agreement executed in writing on October 10, 1941, should be recognized for tax purposes as a partnership. The Tax Court, in the opinion of the majority, stated that the arrangement between petitioner and his wife seems to fall within the broad scope of the definition of the term "partnership" in Section 3797 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3797, but found, nevertheless, that the Canfield partnership "lacks the necessary reality to determine by its terms the taxability of income earned."

It was the opinion of the Tax Court that "the agreement resulted in a business arrangement in which the parties should be taxed in proportion to their respective contributions to capital and services." The Court said: "Since exact measurement of the amount of the income attributable to either capital or services is impossible, a practical approach to the problem is required. Certain facts are to be noted,—the income was principally due to the services of the husband; the wife contributed $4,900 in cash to the enterprise; the petitioner's contribution to capital as of the basic date was $12,543.49." It was held that a "reasonable allocation of income should be made"; that 75 per cent of the earnings of the business, beginning October 10, 1941, was attributable to petitioner's services and 25 per cent to the employment of capital; that petitioner is solely taxable on all income attributable to services; and that of the 25 per cent attributable to capital, petitioner and his wife are respectively taxable in proportion to their respective contributions to capital in the amounts stated previously.

Five Judges of the Tax Court dissented, one without opinion. Four joined in a dissenting opinion which pointed out that the issue squarely raised by the pleadings is whether during the period from October 10, 1941, to December 31, 1941, the petitioner and his wife were partners in the business of Canfield Motor Sales; that petitioner had assigned as error the refusal of the Commissioner of Internal Revenue to recognize the existence of the partnership; and that the answer of the Commissioner presented no facts upon which he relied defensively or for affirmative relief but constituted merely a general denial. The view was expressed that, in the state of the pleadings, if the petitioner and his wife should be held to be partners, the wife would be entitled to share in the profits at least in proportion to her capital contribution, and the husband should be taxed on his proportionate share. The majority opinion was declared by the minority to hold properly that the wife, because of her contribution of $4,900 of her own capital became a partner under a "written partnership agreement, within the meaning of the Federal statute."

The minority opinion writer then stated: "But the opinion (that of the majority) goes on to say that before there is any division of the profits there must first be taken out of the earnings 75 per cent attributable to petitioner's services. I do not see where any such issue has been raised by the pleadings. It would, of course, have

been within the rights of the partners to have had such an arrangement in the partnership agreement, but they did not do so. It may well be that the Commissioner himself could properly raise such a question by a determination of that kind in his deficiency notice or by affirmative allegations in his answer but he has not done so. It does not appear to me why we should raise such an issue."

The issue of the validity for federal income tax purposes of the partnership agreement of October 10, 1941 between Canfield and his wife was undoubtedly presented by the pleadings. In the twelfth paragraph of his petition filed in the Tax Court, Canfield complained that, though he had reported in his return for 1941 as taxable income from the operation of Canfield Motor Sales only the net income of that business as shown by its books for the period from January 1st to October 10th, 1941, the Commissioner in determining a deficiency had included as taxable the total net income of the business for the entire calendar year 1941. The answer of the Commissioner admitted this allegation to be true.

Moreover, the petition of the taxpayer filed in the Tax Court averred that the partnership between Canfield and wife entered into on October 10th for the keeping of its books and filing of its returns and the profits from partnership operations from and after October 10, 1941, had been shown in the return of information filed by the partnership for the period ending October 10, 1942. It was declared further that the distributive shares of the petitioner and his wife in the profits of the partnership had been reported by them in their respective individual income tax returns and that the taxes due had been paid. This was in conformity with Section 188 of the Internal Revenue Code, which provides that if the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable

year of the partner. 26 U.S.C.A. Int.Rev. Code, § 188.

In its decision now under review, the Tax Court accepted the Commissioner's computation, pursuant to Rule 50, 26 U.S.C.A. Int.Rev.Code, following section 5012, of the taxpayer's income and deficiency in income taxes for 1941. This computation was made by prorating over the period of 283 days (from January 1, 1941, to October 10, 1941, when the taxpayer and his wife entered into partnership) the income of the Canfield Motor Sales business for the entire calendar year 1941. The annual income of the business was $31,567.43. The formula applied was $31,567.43 divided by 365 mlutiplied by 283; with the resultant $24,475.57 calculated as the taxpayer's individual income. If a valid partnership for income tax purposes resulted from the partnership of October 10, 1941, between Canfield and wife, this method of calculation was in clear contravention of Section 188, of the Internal Revenue Code, supra. Moreover, it appears even to be inconsistent with the Tax Court's opinion. In any event, a determination of the validity of the husband and wife partnership, for Federal Income Tax purposes is involved on this review. To resolve that issue, a careful consideration of the facts becomes necessary.

The case was tried in the Tax Court on stipulated facts, documentary evidence, and the testimony of the taxpayer and his attorney. It was agreed between contending counsel that the testimony of Mrs. Canfield, if called as a witness would be cumulative and corroborative of that of her husband. The Tax Court filed findings of fact supported by evidence.

In September, 1936, Claire L. Canfield, in his individual capacity doing business as Canfield Motor Sales established a Packard Automobile Agency. He started his enterprise with a capital of $5,898.20: whereof $1,577 represented the proceeds of his adjusted service certificates as a war veteran; $2,421.20 came from the joint savings account of the petitioner and his wife, Elsie Canfield; and $1,900 was an advance to petitioner from his wife who had borrowed the money from her mother.

Mrs. Canfield executed her promissory note for the loan payable to her mother. The note bore interest on its face at the rate of 5 per cent payable annually. The interest was paid, as it accrued, by petitioner to his wife who in turn paid it to her mother until the latter's death in January 1938.

Mrs. Canfield inherited from her mother $3,632.99 in cash and certain securities. On February 26, 1938, she advanced to her husband $3,000 in cash without evidencing the loan by a promissory note. Neither this advance nor the earlier one of $1,900 were recorded as liabilities on the books of Canfield Motor Sales.

On May 31, 1938, the operation of the automobile agency known as Canfield Motor Sales ceased, and on the following day, the petitioner purchased a one-half interest in the individual business of Robert E. Needham conducted as Needham Motor Sales and thereafter until November 17, 1938, that business was carried on as a copartnership under the same name. On the last mentioned date petitioner bought Needham's remaining one-half interest for $2,500.00 in cash, thereby becoming sole proprietor of the business. The source of the $2,500 cash consideration paid to Needham by the petitioner was $3,000 advanced by Mrs. Canfield to her husband on February 26, 1938. From November 18, 1938 to October 10, 1941, the date of the partnership agreement with his wife, the petitioner conducted the business as an individual proprietorship under the name, Canfield Motor Sales.

The foregoing narrative is taken from the stipulation of facts adopted by the Tax Court. The best method of completing the full factual picture would seem to be to quote at length from the Findings of Fact of the Tax Court. And so we quote:

"The record discloses the following additional facts: At the time the petitioner's wife made advances of $1,900 and $3,000 to the petitioner in September 1936 and February 1938, respectively, they agreed that such advances constituted loans to him and he continued to recognize his obligation to repay her these sums until October 10, 1941. When the petitioner bought the remaining one-half interest in the Needham Motor Sales business on November 18, 1938, his wife stated that she desired to have a one-half interest in the petitioner's business, thereafter conducted as Canfield Motor Sales. She stated that she wanted to be protected in the amount of her loan to him.

"The petitioner, thereupon, being aware that she might jeopardize her separate estate by establishing such a partnership, warned his wife of the dangers involved if the business were not successful. He then opened a bank account in the name of Canfield Motor Sales with both the petitioner and his wife having the authority to draw on it. The establishment of the joint account was for the purpose of protecting the petitioner's wife in the event of his death. The formation of a partnership continued to be discussed frequently by them. Early in 1940, the petitioner consulted an attorney, Albert M. Stern, who explained the danger of Mrs. Canfield's losing her other assets if the business failed.

"The petitioner related to his wife the substance of his conversation with Stern. The discussions relating to the formation of a partnership continued until the summer of 1941, when Mrs. Canfield consulted Stern, who repeated the warning which he had given to her husband. At the time, she explained fully the source of the loans which she had made to the petitioner and the fact that she also possessed a separate estate. After further discussion the petitioner and his wife asked Stern to prepare a partnership agreement. Stern stated to Mrs. Canfield that she might have security for her investment in the form of a mortgage but she insisted that she wanted to become a partner in the business of Canfield Motor Sales. Stern recommended that an accountant be employed to supervise the books of the business.

"At first Mrs. Canfield insisted that, in the agreement, restrictions be placed on her husband's authority and on the extent of possible business expansion, but, at their attorney's suggestion, all such provisions were eliminated from the formal agreement.

"The partnership agreement was executed by the petitioner and his wife on October 10, 1941. The firm name was Canfield Motor Sales, which was to carry on the

business of selling and distributing automobiles, selling accessories and repairing automotive vehicles. It was to continue for ten years. The agreement contained the following pertinent paragraphs:

" '5. The capital of said partnership shall consist of the assets of Canfield Motor Sales heretofore exclusively owned by Claire L. Canfield, and by this agreement second party is granted a one-half interest therein, and said interest, together with all the income and profits arising from the employment thereof, to become and constitute partnership funds.

" '6. Claire L. Canfield shall be entitled to draw from the proceeds of said business for his own separate account, One Hundred ($100.00) Dollars per week, while the partnership continues, but with the condition that all such sums drawn by him for the term shall not exceed his share of the profits of said partnership, and if they do, he shall repay the same at the close of the term, the agreement being that each partner shall share equally in all profits and losses that may arise out of or occur in the prosecution of the said partnership operation.'

"Immediately after the partnership agreement was signed the petitioner gave notice thereof to all finance companies, banks and insurance companies with which he did business. He also gave similar notices to the Sales Tax Department of the State of Michigan, The Unemployment Commission and the Secretary of State. Pursuant to such notice to the Sales Tax Department, he received a license naming him and his wife as copartners. The license has been posted on the door of the plant continuously.

"He sent the same notice to the Dodge Factory but his franchise with the Dodge Company was not amended. He likewise notified the partnership's landlord, who told him to leave the lease as it was. He further sent to the County Clerk a notice of discontinuance of the individual proprietorship under an assumed name, and a certificate of copartnership, naming him and his wife as partners conducting the business under the assumed name of Canfield Motor Sales. The notice of continuance was filed by the clerk but the certificate of copartnership was returned, in view of the

Michigan law then relating to the separate estate of a married woman.

"On October 10, 1941, the net worth of the assets of Canfield Motor Sales was $17,443.49. The petitioner employed an accountant to set up capital accounts, to audit the books of the partnership, and to prepare its income tax return. In March 1942 the petitioner filed an individual gift tax return because one-half of the value of the business exceeded the amount of his indebtedness to his wife. The petitioner told the president of his bank that the loans of Mrs. Canfield to the petitioner were never entered on the petitioner's books prior to the formation of the partnership.

"On October 10, 1941, capital accounts reflecting the capital interests of the petitioner and his wife were set up by a certified public accountant upon the books of the partnership. Personal accounts, recording the withdrawals of the petitioner and his wife, were also established. Each partner has withdrawn amounts at irregular intervals since October 10, 1941. The withdrawals were equalized on February 28, 1945. The total amounts withdrawn up to August 31, 1945, were $46,478.02 by the petitioner and $41,198 by Mrs. Canfield.

"The petitioner paid the household and living expenses of his family from his monthly withdrawals. His wife paid none of them. The title to their home was taken jointly by the petitioner and his wife. From their withdrawals, the petitioner and his wife have paid their respective income taxes and each has paid $4,166.47 on the mortgage on their home, $1,000 for furnishings therefor, and $1,125 to purchase War Bonds. Mrs. Canfield purchased a fur coat for her daughter at a cost of $350.

"The surplus withdrawals of both the petitioner and his wife were kept in liquid form and deposited in a joint safe deposit box.

"At the time the partnership was formed it was understood that Mrs. Canfield would not perform any daily services. She examines the monthly financial statements of the firm and discusses with the petitioner the events of the past month.

"After the war started, at the insistence of Mrs. Canfield, the partnership engaged

in the machining business, producing small parts for use in the war effort. The petitioner had had no experience in that activity and the venture was unsuccessful. A problem arose in 1942 when, on January 1 of that year, the Government froze the sale of new automobiles. The partnership had approximately 100 new cars in stock at that time. The petitioner became somewhat panic-stricken and wanted to sell the cars back to the Chrysler Corporation, or to other dealers who would be willing to gamble on them. Mrs. Canfield would not agree to the sale. The firm eventually sold the cars at a profit.

"In his income tax report for the year 1941 the petitioner reported a net income of $13,249.38, including $12,267.55 profits earned by him in Canfield Motor Sales for the period from January 1, 1941 to October 10, 1941. No partnership income was reported in the year 1941.

"In his notice of deficiency the respondent stated: 'It is held that all the income from the business carried on in the name of Canfield Motor Sales (for the entire year 1941), in the amount of $33,192.60, is taxable to you.'

"The Commissioner asserted a 5 per cent penalty 'under the provisions of section 293(a) of the Internal Revenue Code [26 U.S.C.A. Int.Rev.Code, § 293(a)].' The petitioner was not negligent in reporting his income for the taxable years nor did he intentionally disregard the Commissioner's rules and regulations."

The Tax Court found that Mrs. Canfield "insisted" that she be made a partner with her husband, in the business of Canfield Motor Sales. There was much discussion and argument between husband and wife before an agreement was reached. On the record there can be no doubt as to the earnestness or vigor of Mrs. Canfield's firm purpose to become a partner. Attorney Albert M. Stern, with whom they consulted, testified that Mrs. Canfield was "very outspoken" and had "some very definite ideas." Neither husband nor wife would agree to certain things each would do and were in his office "in part as a kind of reconciliation." Finally, the attorney told them: "You folks have a bigger partnership than is represented by this. You folks are man and wife and living together and if you can't straighten those things out, I can't straighten them out by drawing agreements for you. Now, I can give you, Mrs. Canfield, the right that you request here, and I am doing it, but I can't make you happy with your husband nor he with you if it is the other way."

The attorney continued: "They both kinder laughed and said they agreed to that and accordingly, though I had taken notes going into the question of what he would do and wouldn't, I left those all out purposely and drew a simple, formal partnership agreement. * * *" The differences between the Canfields, as described by the lawyer, were rather "financial" than personal and concerned their respective incomes from the business and "the way he saw fit to run it." The attorney testified that while Mrs. Canfield had no intention of selling "individual automobiles" or being on hand every day, she "most definitely" would be concerned in having a voice in "matters of policy."

Moreover, when a husband testifies, as the petitioner did, that though he was afraid they might lose everything they had by taking a particular gamble in their partnership business, his wife "overruled" him, and "wouldn't permit him to sell," the wife would certainly not be properly classified as a docile spouse but rather would qualify realistically as a genuine participant in management and control. The inference is not weakened by the fact that her dictatorial decision brought profit to the firm.

The petitioner correctly states that this case was pleaded and tried in the Tax Court upon the issue of whether or not he and his wife on October 10, 1941 entered into a valid partnership which should be recognized for Federal Income Tax purposes. He contends that the Canfield partnership was valid for tax purposes within the meaning of Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, that a contribution of capital originating with the wife is sufficient to constitute her a partner according to the opinion of the Supreme Court in that celebrated case; that Mrs. Canfield made such contribution of capital, substantial in amount and vital to the conduct of the

business; and, moreover, contributed substantially to the management and control of the partnership business; and that, consequently, the Tax Court erred as a matter of law in allocating business income contrary to the terms of articles of partnership executed in writing by the petitioner and his wife and in rendering a decision which was not responsive to the issue raised by the parties in their pleadings.

■ The position of the petitioner is well taken. In Commissioner v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 537, 90 L.Ed. 670, 164 A.L.R. 1135, the Supreme Court said: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. *If she either invests capital originating with her* or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C., §§ 181, 182, 26 U.S.C.A. Int.Rev.Code, §§ 181, 182." (Italics supplied.) The opinion of the highest tribunal made it plain that the issue, "who earned the income," depends upon whether the husband and wife "really intended to carry on business as a partnership"; but that the issue cannot be resolved by looking at a single step in a complicated transaction but that all steps in the process of earning the profits must be taken into consideration.

■ The instant case bears close analogy in principle to Woosley v. Commissioner of Internal Revenue, 6 Cir., 168 F.2d 330, in which we held that the Tax Court clearly erred as a matter of law *in attributing to the capital contributions all the income* earned by the husband and wife partnership *and in making the allocation which it did contrary to the express provisions of the articles of partnership.* Conversely, we think that it was a plain mistake in law for the Tax Court, in the teeth of the contract, to hold in the present case that seventy five per cent of the earnings of the business "was attributable to the petitioner's services and twenty five per cent to the employment of capital." We find no stronger justification here than we did in the Woosley case for ignoring

and rescinding express provisions concerning the division of profits written into a bona fide partnership agreement between husband and wife. In both cases, the bona fide intent of the husband and wife to enter into a real business partnership is incontrovertible. In the circumstances of this case the Tax Court had no lawful right for income tax purposes to make a new contract for the parties.

In this case, as he did in the Woosley case, the Commissioner in his brief asks this question: "Would any one seriously maintain that the Commissioner is obliged to accord tax effect to an arrangement under which a wife contributes only 10% of the capital and no services, yet is ascribed by the partner's 'agreement' 90% of the total business earnings?" The short answer is that neither the Woosley case nor the case at bar discloses any analogy whatever to the supposititious situation.

In Weizer v. Commissioner of Internal Revenue, 6 Cir., 165 F.2d 772, 775 referring to the doctrine of the Tower case, supra, to the effect that if a wife either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things, she may be a partner as contemplated by sections 181 and 182 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, §§ 181, 182, this court stated *that* Mrs. Weizer *had complied with* all these requirements, "although compliance with only one of them is required." The Tax Court was held to have erred in not recognizing the validity of the family partnership under the rule announced in the Tower case.

Likewise, in Lawton v. Commissioner, 6 Cir., 164 F.2d 380, 385, the decision of the Tax Court against the validity of a family partnership was reversed. The opinion stated that the gifts made by Lawton to his wife and children being valid, whether considered purely as gifts or in consideration of substantial services, "Mrs. Lawton and her daughters made substantial contribution to the capital of the partnership and are, for tax as for other purposes, partners."

The Commissioner contends that no question is presented on this review with respect to the proportionate allocation of partnership income as between the petitioner and his wife, for the alleged reason that no partnership income was included in the deficiency in taxpayer's income tax for 1941 determined by the decision from which the petitioner seeks relief.

The answer would seem to be that the decision of the Tax Court resultant from the computation under Rule 50 increased the petitioner's reported income for the period prior to October 10, 1941 (the date of the partnership agreement) by $12,207.-92 in consequence of the pro-ration formula described earlier in this opinion. Inasmuch as the income of the business from October 10, 1941, to December 31, 1941, was partnership income, *if the partnership is valid for tax purposes, which we are holding that it is,* the earnings from the business during its operation as a partnership in the latter period of 1941 would not be includible in petitioner's 1941 income but would be properly returnable by him in his income tax return for 1942 under section 188 of the Internal Revenue Code. We think, therefore, that the decision of the Tax Court is properly reviewable by this Court.

The decision of the Tax Court is reversed and the cause is remanded to the Tax Court for recomputation of the tax in conformity with this opinion.