## SHUNK et al. v. COMMISSIONER OF INTERNAL REVENUE.

## SHUNK'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

## FEGLEY'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

No. 10771.

United States Court of Appeals
Sixth Circuit.

April 4, 1949.

J. Kenneth Baird, of Chicago, Ill., (K. Raymond Clark and J. Kenneth Baird, both of Chicago, Ill., on the brief), for petitioners.

Carlton Fox, of Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, and Louise Foster, all of Washington D. C., on the brief), for respondent.

Before ALLEN, MARTIN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The petitioners seek separate reviews of three decisions of the Tax Court adjudging deficiencies in income tax for the calendar year 1940. The cases involve the same facts and are before us on a consolidated record. The question presented is whether property transferred by a trust estate, operating as a business, to a partnership formed by the beneficiaries of the trust estate, for an amount substantially less than its fair market value, constituted a distribution to the beneficiaries of earnings or profits taxable as a dividend in the year of the transfer.

The facts are not in dispute and are as stated in detail by the Tax Court in 10 T.C. 293. A summary of the more important ones is as follows: John Q. Shunk, Francis R. Shunk and Catherine Fegley were the owners under a trust agreement dated February 16, 1938 of the Shunk Manufacturing Company of Bucyrus, Ohio. The Company was an association taxable as a corporation. Under date of November 1, 1940, they, together with Mary E. Gardiner and Gale Fegley, entered into a partnership for the purpose of acquiring all the assets and business of the Shunk Manufacturing Company. Each partner's income or loss derived from the partnership business was to be distributed one-half to a capital account and one-half to a personal account. Any amount standing to the credit of a partner in his or her personal account could be withdrawn by the partner. If any partner retired for any reason, such partner's interest was to be considered to be of a value as shown by such partner's personal account and such partner's capital account, plus amounts due and less debts owed as shown by the partnership's record. Upon dissolution of the partnership for any reason the remaining partners were given the option of acquiring the share or interest of the partner retiring or ceasing to be a partner at the value specified for computing a partner's interest.

The new partnership purchased the business from the trust estate as of November 1, 1940. The terms of sale were $3,000 cash plus five notes of approximately equal amounts due 2, 4, 6, 8 and 10 years after date, each note bearing interest in the sum of $100 per annum until fully paid. The notes, as executed, were for $89,570.25 each, totaling $447,851.24. On November 28, 1940, each of the partners paid $1000 into the partnership, which in turn was paid by the partnership to the trust estate. Three of the notes were paid during 1942. The last two notes were paid in full on October 29, 1943. Neither the partnership nor the trust estate discounted the notes in maintaining their accounting records.

The trust estate had undistributed earnings and profits on October 31, 1940, accumulated after February 28, 1913, of not less than $276,988.48. After November 1,

1940, the partnership continued to engage in the business formerly conducted by the trust estate.

Catherine Fegley died in October 1941 and Francis R. Shunk died in 1943. In each instance new partnership agreements were executed with some change in partners and respective interests but with the same material provisions contained in the original partnership agreements.

In October 1941, Catherine Fegley's personal and capital accounts were credited with $22,620.29 and $22,620.30 as her share of partnership earnings. As of October 31, 1941, her personal and capital accounts showed a balance of $19,576.09 and $23,-620.30 respectively. The latter amounts were turned over to her executor as her total interest in the partnership and was the entire amount that she received from her participation therein.

In August 1943, the co-partners sold the business, certain assets of the partnership, the partnership name and the inventory for $570,200. The appraisal of assets made by the purchasers included no amount as representing the value of good will.

The Commissioner made a deficiency assessment against each of the three petitioners for the year 1940 and in the proceedings in the Tax Court to review that action he claimed increased deficiencies, contending that the difference between the fair market value of the assets and business sold and the cash and the discounted value of the notes paid therefor constituted a distribution of earnings and profits taxable as a dividend to the beneficiaries. The Tax Court held that on October 31, 1940 the trust estate had an intangible asset, namely, good will, which had a fair market value of $110,194.80 and which the trust estate transferred together with its business and other assets to the partnership; that the notes given in payment by the partnership in the face amount of $447,851.24 had a fair market value of $379,040.26; that the trust estate accordingly transferred property for an amount substantially less than its fair market value, and that the difference between the amount paid for the property and its fair market value, namely, $178,905.78, was in effect a distribution of earnings and profits taxable as a dividend to the stock-

holders-beneficiaries. It adjudged deficiencies in income taxes for 1940 against John Q. Shunk in the sum of $79,096.17, against the estate of Francis R. Shunk in the amount of $12,539.63, and against the estate of Catherine Fegley in the amount of $11,940.34.

The petitioners contended that the business (trust estate) had no good will on October 31, 1940, and that such good will as existed was attributable to the person of John Q. Shunk and not to the business. The Tax Court recognized the value of John Q. Shunk's management to the business, but concluded in the light of all the facts that there existed a good will of the business separate and distinct from this. Whether good will existed and its value were questions of fact for the Tax Court. House & Herrmann v. Lucas, 4 Cir., 36 F.2d 51; Ushco Manufacturing Co. v. Commissioner, 2 Cir., 151 F.2d 821. The seller of a going business necessarily transfers its good will. Pfleghar Hardware Specialty Co. v. Blair, 2 Cir., 30 F.2d 614, 617. In fixing the value of the good will so transferred the Tax Court used the formula set forth in Appeals and Review Memorandum, 34, 2 C.B. 31 (1920). We approve for the reasons given by it, of its selection of the five-year period instead of the longer period contended for by the petitioners. The use of this formula has been approved by the authorities. Pflegar Hardware Specialty Co. v. Blair, supra. See Mertens, Law of Federal Income Taxation, Sections 59.37–59.44. The findings are not clearly erroneous, and are accordingly approved.

We are of the opinion that it was also proper for the Tax Court to consider the discounted value of the purchase money notes instead of their face value. For income tax purposes property received by the taxpayer is accounted for at its fair market value. Cherokee Motor Coach Co. v. Commissioner, 6 Cir., 135 F.2d 840, 842. For the reasons given by the Tax Court, its finding on this issue is also approved.

The remaining question is whether the difference of $178,905.78 between the fair market value of the property sold to the partnership and the amount paid for it

by the partnership is taxable as dividends paid to the petitioners for the year 1940. Dividends received by a taxpayer are taxable income under Section 22 of the Internal Revenue Code, 26 U.S.C.A. § 22. If property is transferred by a corporation to a shareholder for an amount substantially less than its fair market value, regardless of whether the transfer is in the guise of a sale or exchange, the difference between the fair market value of the property and the amount paid for it is considered as a distribution of earnings or profits taxable as a dividend. Section 19.22(a)-1 Treasury Regulations 103; Palmer v. Commissioner, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50; Timberlake v. Commissioner, 4 Cir., 132 F.2d 259, 261. The Timberlake case points out that the property so transferred must cease to be a part of the corporate property in which the stockholders had an indirect and undivided interest and become "their separate and independent holding, of which they could dispose at will." The petitioners recognize these established principles but contend that the transfer in the present case was not a distribution of profits to them, taxable as dividends in 1940 because (1) the transfer was to the partnership instead of to them as individuals, and (2) the property so transferred to the partnership did not become their separate and independent holding of which they could dispose at will.

We are of the opinion that the Tax Court erred in charging any taxable income to the petitioners *in the year 1940*. The petitioners did not receive the property in 1940. The partnership received it in that year. Under Section 182 of the Internal Revenue Code, 26 U.S.C.A. § 182, a partner is taxable upon his distributive share of the ordinary net income of the partnership for the partnership's taxable year, whether or not distribution is made to him. But the amount of this taxable income is not determined until the end of the partnership's fiscal year. Periodic or monthly distributions to the partners during the year can not be treated as payments of net income. If the partnership has been operating at a loss during that part of the year, such payments are distributions of capital. Profits

made during the first part of the year may be wiped out by operating losses during the remainder of the year. The fiscal year of the partnership in the present case ended October 31, 1941. Under Section 188 of the Internal Revenue Code, 26 U.S.C.A. § 188, the partners' distributive shares of the net income of the partnership were not determined, and were not returnable as taxable income, until October 31, 1941. Canfield v. Commissioner, 6 Cir., 168 F.2d 907, 914; Estate of S. U. Tilton, 8 B.T.A. 914. . See Guaranty Trust Co. v. Commissioner, 303 U.S. 493, 498, 58 S.Ct. 673, 82 L.Ed. 975.

■ Nor do we agree with the ruling of the Tax Court that the entire "dividend" (assuming it to be a dividend) of $178,905.-78 should be taxed to the three petitioners. The *partnership* received the "dividend," and each partner was entitled to only his proportionate share thereof. Mary Gardiner and Gale Fegley each had a one-twelfth interest in the partnership. Their combined one-sixth interest in the so-called "dividend" can not be taxed to the other three partners. The Commissioner's contention that the trust had no power to distribute its assets to anyone except the trust beneficiaries and accordingly the transaction must be treated as a distribution to them and a later gift by them of the one-sixth interest to the other two partners merely ignores the actual facts. The transaction was not a distribution of assets to the beneficiaries, although so construed for tax purposes. The trust *sold* its assets to five purchasers. There was no restriction on its right to sell its assets to outside purchasers. The two non-beneficiaries paid their portion of the purchase price and took title to their interest in the property. If the trustees sold at too small a price they may be liable for negligence or breach of trust, but it does not prevent the passing of title to the purchasers. The petitioners never purchased, or purported to purchase, the one-sixth interest bought by Mary Gardiner and Gale Fegley.

We also disagree with the Tax Court's ruling that the $178,905.78 under consideration was a dividend to the three petitioners, or any of them, under Treasury Regulations 103, supra, Palmer v. Commissioner, supra, and Timberlake v. Commissioner, supra. Section 115(a) of the Internal Revenue Code, 26 U.S.C.A. 115(a), in defining a dividend, provides that it is a distribution of money or property by a corporation "to its shareholders." Section 115(j), in placing a value on property so distributed requires the property to be included in gross income at its fair market value "at the time as of which it becomes income to the *shareholder*." (Emphasis added.) The property sold by the trust was sold to the *partnership;* it was not a transfer (or distribution) to its beneficiaries (or shareholders). It at no time prior to 1943 became income, much less a dividend, to any of its beneficiaries (or shareholders). To hold otherwise would completely ignore the legal concept of a partnership. The ruling of Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L. Ed. 670, 164 A.L.R. 1135, does not invalidate all partnerships whenever an income tax question is involved. It involved the so-called family partnership, and even in that field only invalidated such partnerships which were merely partnerships in form rather than substance. Valid bona-fide family partnerships were specifically exempted from the rule. Lawton v. Commissioner, 6 Cir., 164 F.2d 380; Weizer v. Commissioner, 6 Cir., 165 F.2d 772; Woosley v. Commissioner, 6 Cir., 168 F.2d 330. See also Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 101 A.L.R. 200, certiorari denied Helvering v. Chisholm, 296 U.S. 641, 56 S. Ct. 174, 80 L.Ed. 456.

■ Recognizing the validity of the partnership in the present case, it is clear that the transfer of the property to it was not a transfer to the petitioners. A partner's interest in the partnership property is not an unrestricted one. It is to share in the profits and surplus *after* the partnership debts have been paid. Commissioner v. Shapiro, 6 Cir., 125 F.2d 532, 535, 144 A.L. R. 349. Even such right to share is further limited by the terms of the partnership agreement, which may be fixed by the partners to suit themselves. Montgomery's Federal Taxes, 1948–49 Ed., Vol II, p. 780. In the present case, participation by any of the partners in the profit made from the partnership purchase was dependent upon

the particular partner remaining in the partnership until such time as the business was resold and a final distribution made. Upon Catherine Fegley's death her executor received as her entire interest in the partnership only the amounts standing to her credit in the two accounts between which the profits of the business had been divided. Neither she nor Francis R. Shunk, nor their respective estates, did at any time receive any portion of the money which the Tax Court's decision charges to them as a dividend in 1940. Such a claim to the profits of the partnership is not the receipt of a dividend from the trust estate; the money or property has not been "unqualifiedly made subject to the stockholder's demand." Avery v. Commissioner, 292 U.S. 210, 214–215, 54 S.Ct. 674, 676, 78 L.Ed. 1216; Estate of Putnam v. Commissioner, 324 U.S. 393, 399, 65 S.Ct. 811, 89 L.Ed. 1023, 158 A.L.R. 1426. Contingent income of this kind, possibly payable in the future, is not taxable income. United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 99, 56 S.Ct. 353, 80 L.Ed. 500; Burnet v. Logan, 283 U.S. 404, 413, 51 S.Ct. 550, 75 L.Ed. 1143. Even though there has been a severance of the property from the corporation, it does not become taxable income to the individual who ultimately receives it until he receives it or his unqualified right to it has matured. Frazer v. Commissioner, 6 Cir., 157 F.2d 282, 284, certiorari denied 329 U.S. 807, 67 S.Ct. 502, 91 L.Ed. 689; Schaefer v. Bowers, 2 Cir., 50 F.2d 689, certiorari denied 284 U.S. 668, 52 S.Ct. 42, 76 L.Ed. 566; Perkins v. Commissioner, 8 T.C. 1051, 1056; Robertson v. Commissioner, 6 T.C. 1060.

Such ruling does not provide an escape from income tax liability. It merely changes it from 1940 to a later year and to different partners. A profit, based on the favorable purchase price, was realized by the partnership on the resale of the business in 1943 and distributed to the partners upon the dissolution of the partnership.

The judgment of the Tax Court is reversed, and the case is remanded with instructions that the income tax deficiency of the petitioners for 1940, if any, be redetermined in accordance with the views expressed herein.