ZANDER et ux. v. COMMISSIONER OF INTERNAL REVENUE.

No. 12349.

United States Court of Appeals Fifth Circuit.

April 8, 1949.

Henry Grun and Arthur W. Mueller, both of San Antonio, Tex., for petitioners.

Melva M. Graney, Ellis N. Slack, A. F. Prescott and Sumner M. Redstone, Sp. Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and Charles Oliphant, Chief Counsel, and J. W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

LEE, Circuit Judge.

This case is before us on petition to review the decisions of the Tax Court of the United States which held with the Commissioner of Internal Revenue that there were deficiencies in the 1941 and 1943 income taxes of Liston E. Zander and Mary Katharine Zander, husband and wife. Disposition of the case is dependent on a determination of the reality, for tax purposes, of a family partnership, composed, in this instance, of a father and his children and accomplished by means of gifts to the children from the father and mother under trust indentures naming the father trustee.

The Zanders were residents of Texas, a community property State. Liston Zander, using funds of the community, started an automobile-finance business, styled the Liston Zander Credit Company. In 1941, the business having prospered, Zander and his wife decided to give a 20% interest in the assets of the credit company to each of their three children, then minors attending school. To effectuate their purpose, Mr. and Mrs. Zander executed three trust instruments, irrevocably conveying in each a 20% interest in the Liston Zander Credit Company to Liston E. Zander, as trustee for the child named in the instrument.[1] At the same time, Zander as trustee entered into a partnership agreement with himself individually to continue operation of the company. These transactions were summarized on the company's books by a charge of $54,465.09 against Zander's capital account, and a credit of one third thereof ($18,155.03) to each of three new trust accounts. Thus, in the new partnership, Zander contributed 40% of the capital individually, and the other 60% came from the trusts, the total amount being the same as Zander theretofore had invested in the business. Notice of the partnership was filed, and a certificate was issued by the County clerk of Bexar County, Texas, certifying that the partners were doing business under the name of Liston Zander Credit Company; notice was likewise given banks, credit agencies, and the general public.

By the terms of the trust indentures,[2] Liston Zander, as trustee, was given broad

---

[1] At the time the transfers were made, the taxpayers filed gift tax returns, and each of them paid a gift tax.

[2] Paragraph II reads:

"The trustee * * * shall have the sole and complete right and authority to possess, control, manage and dispose of any and all property at any time belonging to or becoming a part of the trust estate. * * * the trustee is hereby specifically authorized and empowered, upon such terms as he deems proper, to sell, convey, exchange, transfer, assign, lend (either with or without security), invest, rent, lease (including mineral leases) without regard to the term of the trust, mortgage, pledge, or otherwise encumber or dispose of, all or any part of the trust estate; to acquire, improve and dispose of real estate; * * * to invest and reinvest any sums held or received by the trust estate in such notes, stocks, bonds, or other securities or property, real or personal, including the operation of any business, as the trustee shall deem proper; * * * to engage in any business or business ventures which the trustee may deem expedient, whether as sole owner, partner (either general or limited) or as a subscriber to the capital

powers over both the corpus and income of the trusts: He received the powers to possess, control, and manage; to invest, reinvest, and operate a business with the trust funds; and to accumulate the income during the minority of the particular beneficiary. In an emergency, he could distribute the corpus. Only after the beneficiary reached twenty-one was he required to distribute any of the funds and then to the extent of at least $100 per month to the beneficiary.

Pursuant to the partnership agreement, Liston Zander continued active operation of the credit company. For his services he received a salary of $1,000 a month for the last six months of 1941, and $10,000 a year for 1942 and 1943. Acting within the discretion given him and believing it to be more profitable, Zander made no substantial distributions of the profits of the business, ánd the only distributions were incidental payments made for school and dental expenses in the year 1943. Each account, however, was credited with its proportionate share of the business profits. In March 1945, after the Commissioner had questioned the bona fides of the partnership arrangement, the Frost National Bank of San Antonio [3] took over as trustee in Zander's stead, acting as a special partner in the business. Later Zander acquired from the bank the interest each had in the business, paying for each $32,000.

On their income tax returns for 1941 and 1943, petitioners failed to report profits of the Zander Credit Company accruing to the trusts, and the Commissioner added these amounts to the incomes reported, determining that, under the theory of the Tower and Lusthaus cases, cited infra, petitioners were taxable on the whole income from the business. The Tax Court decided that there was no change in petitioners' economic position as a result of the trust and partnership arrangement; that the taxpayers merely sought to channel income to other members of the family, members who contributed neither services nor new capital; and, further, that the capital the taxpayers put into the trust estates remained under Zander's exclusive control after the trusts were created. The Tax Court also held that the wife would be subject to tax on half of the income added to the community by the Commissioner's sustained determination, for her interest derived from her community property rights.

The status of the trust and partnership arrangement in 1941 and 1943 will determine this case; subsequent changes in the arrangement, brought about after the Commissioner questioned the legality of this family partnership as creating separate taxable units, have no bearing on the decision. The broad powers vested in the trustee indicate, in their sum, that his control of the capital placed in trust was virtually as complete after the creation of the trusts, until the particular beneficiary reached majority, as it was prior thereto, when such capital was community property. As trustee, during the minority of each child, Zander's powers and duties approximated and were neither less restricting nor more liberal than those similar powers and duties exercised and discharged by a prudent and diligent father who recognizes his material obligations to his children and his children's natural interest in his possessions. Representing, as it were, the minor beneficiaries, the trusts received three-fifths of the Zanders' community investment in the original Liston Zander Credit Company, and Zander's position with respect to that portion was a translation from a father-owner relationship to a father-trustee relationship. The trusts might be said to correspond to a conduit through which money was transferred from a right pocket to a left—here, both pockets Zander's and

stock of a corporation or corporations; * * * and further, to do any and all other things which are reasonably necessary to the accomplishment or carrying out of the foregoing general and special powers. The trustee shall not be a guarantor of any investments made or retained by him for the trust estate, and shall be responsible only for the use of reasonable care and diligence in the performance of his duty as trustee. The trustee is hereby especially authorized to retain, in his discretion, but without any liability for depreciation or loss, so long as he acts in good faith, the properties constituting a part of the original trust estate, or any received therefor in exchange or extension."

[3] The bank was designated substitute trustee by the instruments.

the contents of one as free to his use as the contents of the other. To condone such a procedure, for tax purposes, would hardly be less than establishing a means to tax evasion, and it is evasion, not avoidance, of the tax that the law deprecates and prohibits.

It is not disputed that, as the Tax Court found, the three minor, school-age children-beneficiaries furnished no active services to the partnership and made no contribution of new capital. The combination of such a negative affiliation with the owner-to-trustee extension of economic control brings this case well under the rule set out in the companion cases Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. In the Tower case, Mr. Justice Black, delivering the opinion of the court, made the following statement:

"There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws." [327 U.S. 280, 66 S.Ct. 537]

Though the court was dealing there with a husband-and-wife partnership, the law is equally applicable to any family-group partnership.

In Belcher v. Commissioner of Internal Revenue, 5 Cir., 162 F.2d 974, 976, we held that, while, for tax purposes, family partnerships via gift are not ipso facto illegal under federal law, they must be partnerships in reality, "accompanied by investment of capital, participation in management, rendition of services by the family partners," or by other significant demonstrations of actuality.[4]

The petitioners have failed to disclose any factual error on the part of the Tax Court that would cause the case to be removed from the purview of the above authorities: Zander has not established, for federal tax purposes, the bona fides and realities of the trusts, for, all things considered, they were in truth his alter ego.

That the wife is taxable for her half of the additional income, as decided by the Tax Court, is not open to dispute. It is beside the point for petitioners to argue that her non-participation in the partnership arrangement relieves her of the tax obligation for income to the partnership: Her interest in the income arises, not from contract, but from community property status.

The decisions of the Tax Court are affirmed.

4 Canfield v. Commissioner of Internal Revenue, 6 Cir., 168 F.2d 907, represents the factual situation and the legal consequences where there is a bona fide and real family partnership. See also Lawton et al. v. Commissioner of Internal Revenue, 6 Cir., 164 F.2d 380.