## SUPORNICK v. COMMISSIONER OF INTERNAL REVENUE.

No. 12973.

Circuit Court of Appeals, Eighth Circuit.

June 25, 1945.

Samuel Lipschultz, of St. Paul, Minn. (William M. Serbine, Melvin L. Lipschultz, and Sydney W. Goffstein, all of St. Paul, Minn., on the brief), for petitioner.

Harold C. Wilkenfeld, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case is presented on the petition of Joseph Supornick, a taxpayer, to review a decision of the Tax Court of the United States redetermining deficiencies in petitioner's income taxes for the years 1940 and 1941. The controversy is whether during the taxable years involved a partnership existed between the petitioner and his two sons, Meyer and David Supornick. The petitioner and his sons, claiming that a partnership existed, filed their returns on that basis. The Commissioner found that the claimed partnership did not exist and adjusted the taxpayer's return accordingly. On appeal the Tax Court after a full hearing made findings of fact and filed an opinion, unreported, holding "that no valid or bona fide partnership between petitioner and his two sons existed during the taxable years."

The petitioner contends that the findings and conclusions of the Tax Court are contrary to the evidence and the law; that the evidence conclusively establishes, as a matter of law, the existence of a partnership for the separate taxable years.

Partnership is a legal concept, but the determination of the existence or not of a partnership, as in the case of a trust, involves inferences drawn from an analysis of "all the circumstances attendant on its creation and operation." Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788; Doll v. Commissioner of Internal Revenue, 8 Cir., 149 F.2d 239.

The Internal Revenue Code provides its own concept of a partnership. Local law is of no importance in this connection. Sections 19.3797—1 and 4, Treasury Regulations 103, promulgated under the Internal Revenue Code; Doll v. Commissioner of Internal Revenue, 8 Cir., 149

F.2d 239; Earp v. Jones, 10 Cir., 131 F.2d .292, certiorari denied 318 U.S. 764, 63 S. Ct. 665, 87 L.Ed. 1136.

■ There is no substantial conflict in the evidence produced before the Tax Court. The contest here relates primarily to the proper inferences to be drawn from the evidence. The function of the Circuit Courts of Appeals in reviewing the findings and conclusions of the Tax Court in tax disputes is well settled. It is the function of the Tax Court to find the facts, to weigh the evidence and to choose "from among conflicting factual inferences and conclusions those which it considers most reasonable." The Courts of Appeals can not change or add to findings or conclusions of the Tax Court, or reweigh the evidence. This court can not search the record for evidence to support other conflicting inferences and conclusions which may seem more reasonable. We must look primarily upon the evidence in support of the Tax Court's findings, inferences and conclusions; and, if we find a substantial basis for such findings present in the evidence, "the process of judicial review is at an end." Commissioner of Internal Revenue v. Scottish American Investment Co., 323 U.S. 119, 124, 65 S.Ct. 169, 171; Commissioner of Internal Revenue v. Wemyss, 324 U.S. 303, 65 S.Ct. 652; Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707; Bingham's Trust v. Commissioner of Internal Revenue, 65 S.Ct. 1232; Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

■ Applying these rules and observing these limitations upon our power it will not be necessary to set out all the evidence or all of the findings of the Tax Court. The following findings are supported by the record, and they in turn support the inferences and conclusions of the Tax Court. They must, therefore, be accepted by us as conclusive on review.

The petitioner, 60 years of age in 1943, resides in St. Paul, Minnesota. Since 1915 his principal business has been that of adjusting fire losses as a representative of the insured. In later years he has made substantial investments in real estate and otherwise.

In December, 1936, while on her deathbed, petitioner's first wife said to him: "I know I am going—I want you to take the boys and keep them near you. Take them in your business. I want you to teach them your business." At that time the sons, Meyer and David, were respectively 22 and 18 years of age. Meyer was working in his father's office and David was in college. They had worked for their father at odd hours and during vacations since they were 14 years of age. Except for a period of six or seven months in 1938 or 1939, Meyer continued to work for his father in the adjusting business through 1939. In 1940 he worked in a store in Minneapolis. Sometime in 1940 he went to California where he considered a proposition to go into business. Petitioner refused to furnish him the money necessary. On February 26, 1941, Meyer was officially registered as the owner of a liquor business. Since May 28, 1941, he has been in the United States Army.

David was in the army from February 29, 1940, to August 28, 1940, also from January 2, 1941, to February 17, 1941, and continuously since March 2, 1942. At intermediate times during 1940 and 1941 both boys were engaged in the adjusting business. Until the end of 1939 they each received salaries when employed by their father. After January, 1940, they had drawing accounts with the office.

Petitioner contends that the contract of partnership rested entirely in parole for the year 1940, and that it was partly reduced to writing for the year 1941. The terms of the oral contract are found in the testimony of the petitioner only, corroborated by the instructions given his bookkeepers and conversations with associates or friends. He testified that in October or November, 1939, he called his sons into his office and said to them:

"Boys, up to now I give everything that a father could give you, I give you private military school education, I pay your insurance, I give you nice home, nice rooms, clothing, I give you everything a father could give. I would like to give you a proposition. From now on, from next year, I would like to put you in as partners in my business, but it is the understanding that you put all your time in, work up in your own name the way I did. * * * You don't have to put in capital. * * * If you prove that you are doing a good job in a few years I will turn over the entire business to you. * * * From 1940 I will give you 25 per cent of any income that comes in in this office, including the real estate, the insurance, but with one understanding, * * * you will have to

112

take care of everything, attend to the real estate, collect the rent, see the property is taken care of in a proper way. * * * Twenty-five per cent of the profit of my business from real estate, insurance, and adjusting will be your pay or profit if you put in all your energy and work up this in your own name. If you do make good, that is what your profit will be. * * * If you go ahead and put your energy, your head in the work, you will get 25 per cent of the profit. Now, if you do a good job I intend to retire entirely out of this, quit."

He testified that the boys agreed to that arrangement.

In January or February, 1940, petitioner told his bookkeeper that the boys were to receive 25 per cent. each of all profits of the business. He also told the accountant who prepared tax returns for the business that he had taken the boys into partnership and that they were each to get 25 per cent.

of the profits—"except they were not going to have any of that profit until they earned it." The accountant suggested that it would be necessary to have an agreement.

Pursuant to the directions of petitioner an attorney drafted an agreement, copy of which it set out in the margin,[1] and it was signed by the parties December 31, 1940. The written agreement was intended to include the same terms as did the oral agreement, but through oversight the care of petitioner's real estate and the collection of rents were omitted.

The only change made in the ledger in 1940 was to change the salary accounts of the sons to drawing accounts. The income from the business was at all times carried in an account in the petitioner's name. Profits were divided in the accounts only at the end of each year. The sons were at no time authorized to write checks against bank accounts carried in the name of petitioner. Meyer had a checking account in

[1] This Agreement, Made and entered into this 31st day of December, 1940, by and between Joseph Supornick, as party of the first part, David Supornick, as party of the second part, and Meyer Supornick, as party of the third part, witnesseth:

The parties hereto have been operating under a verbal partnership since January 1st, 1940, but they deem it best for the protection of all parties concerned to enter into this partnership agreement.

(1) That the parties hereto form a partnership for the transaction of the business of adjusting fire losses.

(2) The business of the partnership shall be conducted under the name of the party of the first part, and the office of the partnership shall be in the city of St. Paul, Minnesota.

(3) The partnership shall commence on the first day of January, 1941, and shall continue for a period of two years thereafter.

(4) The net profits of the partnership shall be divided among the parties hereto in the following proportions:

Fifty per cent. (50%) thereof to the party of the first part,

Twenty-five per cent. (25%) thereof to the party of the second part,

Twenty-five per cent. (25%) thereof to the party of the third part,

and the losses if any, shall be borne by the said parties in the same proportions.

(5) The partners shall be allowed to draw from the business such amounts as shall be agreed to by the parties hereto hereafter, and in accordance with the earnings of the business.

(6) All moneys received from the operations of the partnership business shall be deposited in such bank or banks as the parties may select, and shall be drawn out only upon checks signed by the first party, or by such other signature or manner as the parties hereto may mutually agree upon.

(7) Books of account shall be kept by the partners, and entries made therein of all moneys, goods, effects, debts, receipts, payments and all other transactions of the partnership. Such books of account and all other books, papers and records belonging to the partnership shall be kept at the partnership office, and shall be at all times open to the examination of the partners.

(8) Whenever and as often as it shall be ascertained that there are profits arising from the partnership transactions available for distribution, there may be a distribution of such profits between the parties hereto, provided that all parties think it proper to make such distribution.

(9) The parties of the second and third parts shall have no interest whatsoever in the capital of the business, and such capital shall be the sole property of the party of the first part.

In Witness Whereof the parties hereto have hereunto set their hands the day and year first above written.

Joseph Supornick,
Meyer Supornick,
David Supornick.

In presence of:
C. F. Peilen.

a bank in St. Paul, the year end balances of which in 1940 and 1941 were $291.62 and $572.63, respectively. David opened his first checking account in a bank May 28, 1941, by the deposit of a check in the amount of $5,000 issued to him by his father. At the end of the year he had a balance of $3,664.48. The banks in which the separate accounts of petitioner, Meyer, and David were carried were at no time notified that the sons had a partnership interest in the business conducted prior to 1940 by the petitioner as an individual.

The petitioner's name only appeared on the office door and in the building directory in which the alleged partnership business was carried on. The classified section of the St. Paul telephone directory during 1940 and 1941 listed under the heading of Adjusters the name of petitioner but not that of the sons or any name suggesting the alleged partnership.

All checks issued in payment of the Federal income tax liability shown on the returns of Meyer and David for the years 1940 and 1941 were signed by petitioner and drawn against bank accounts maintained in his name.

The sons were listed as employees of the petitioner in the Minnesota State Unemployment Tax Return for 1939, but not in 1940. Petitioner's name and signature appeared as employer on Federal Insurance Contribution Returns filed with the Collector of Internal Revenue for the years 1940, 1941, and 1942, but amended returns were filed for each of those years by David Supornick as office manager. The return for 1943 was filed under the names of Joseph, Meyer, and David Supornick, and petitioner's signature is followed by the description "partner." Attached to the return is the statement: "This business has been operated as a partnership since January 1, 1941, and is known as Joseph Supornick and Sons, 1014 Guardian Building, St. Paul, Minnesota."

Weighing all petitioner's conversations with his boys and all the circumstances in evidence the Tax Court concluded that no oral agreement of partnership existed for the year 1940; that there was no outright offer of partnership presently effective made by the petitioner; and that even the promise to each son of 25 per cent. of the profits of the business amounted to no more than an oral assignment of income, conditioned on the sons' making good in the business.

As to the written agreement for 1941, the Court observed that the interpretative testimony of the petitioner as to his intention and understanding of the terms applies to the written agreement as well as to the oral arrangement. The commitments of the petitioner were wholly contingent on performance by the boys and constituted no more than a conditional assignment of a part of petitioner's income. If the boys failed to perform they would not receive any share of such income. Consequently, the Tax Court concluded, no valid or bona fide partnership existed during the taxable years.

Since we find that there is a substantial basis in the evidence to support these inferences and conclusions, the decision of the Tax Court is affirmed.