## HARTZ v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13687.

United States Court of Appeals
Eighth Circuit.

Oct. 27, 1948.

**314**

Donald B. Smith and I. E. Krawetz, both of St. Paul, Minn. (Randall, Smith, Blomquist & Krawetz, of St. Paul, Minn., on the brief), for petitioner.

Melva M. Graney, Sp. Asst. to Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack, Fred E. Youngman and George A. Stinson, Sp. Assts. to Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before SANBORN, WOODROUGH, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This action involves the correctness of the conclusion reached by the Tax Court of the United States that a partnership entered into by L. B. Hartz, his father B. J. Hartz, his mother Mrs. L. K. Hartz, his sister Miss Louise K. Hartz, and his wife Harriet L. Hartz was invalid for tax purposes. The Commissioner of Internal Revenue had reached the same conclusion and assigned the entire income of the business for the year 1941 to L. B. Hartz. Upon review by the Tax Court a small portion of the income for that year was allocated to B. J. Hartz, Mrs. L. K. Hartz and Miss Louise K. Hartz and the Commissioner's assessment against L. B. Hartz for the tax on the remainder was approved. This appeal is from that decision of the Tax Court.

Mr. B. J. Hartz was a carpenter and contractor. The family lived in Duluth, Minnesota. Mr. Hartz owned the home and other property including a small tract of land suitable for truck farming. In 1911 when L. B. Hartz was 16 years of age, he, his mother, and his sister operated this small tract of land together as a truck farm. They did much of the work themselves, employing additional help in the preparation of vegetables for market when needed. They divided the profits—one-half to L. B. and one-fourth each to the mother and sister. This arrangement continued until L. B. was drafted in 1917. It is described as a small enterprise and by modern standards appropriately so, although the last and largest year yielded a net return of between $1,500 and $1,600. After L. B. returned from the service late in 1919 he attended business college and thereafter worked for a time with a meat packing firm, then for approximately two and one-half years as a bookkeeper in a hardware store. By 1925 he had approximately $2,500 invested in the residue of a stock of merchandise of a Duluth company which he purchased that year. In 1925 he and an unnamed associate purchased a store at Roseau, Minnesota, a town of about a thousand inhabitants. Hartz borrowed $2,500 from a Duluth bank to put up his part of the purchase price. After about three weeks, L. B. bought out his partner by turning over to the latter 700 pairs of shoes and all the cash receipts for the three weeks operation. He had a store and no money with which to operate it. A family conference was held with the result that the father, B. J. Hartz, loaned him $300 and his sister Louise, $500. There was no note given to either and no written agreement evidencing the terms of the loan. The testimony of all three is to the effect that they were to be paid 6% on the loans and to have an interest in the business. The type or nature of that interest in the business remains to this date undefined. The business was operated by L. B. It grew and in 1928 was incorporated, apparently for the main purpose of selling stock to the public and thereby raising capital which was much needed in ever increasing amounts. An effort was made to obtain the permission of the Minnesota State authorities to issue and sell stock on a capitalization which included "good will" valued at $25,000. The desired authorization was denied. In 1928 the sister, Louise, put an additional $500 into the business on the same terms as the original $500. The business continued to expand and increase until in 1937 a number of stores were being operated by the corporation. With that increase and expansion there was an increasing need for larger operating capital.

The charter of the corporation restricted the indebtedness of the corporation to $50,-000. The corporation was liquidated in 1937. At that time L. B. Hartz owned 75% of the stock, the other members of the family approximately 12½%, and the remaining 12½% was held by "outsiders". The liquidation was effected by the stock of the outsiders being paid off and the stock canceled. The 12½% held by the family other than L. B. was retired and each member of the family was credited in an investment account of the business with the value of their stock which value and credit equaled the amount each had invested in the business in cash of their own funds acquired from sources other than the business. At that time those investments were as follows: B. J. Hartz $300 in 1925; Miss Louise K. Hartz $500 in 1925, $500 in 1928, $4,500 in 1934, and $1,000 in 1937; Mrs. L. K. Hartz (the mother of L. B.) $1,000 in 1937; Mrs. Harriet L. Hartz (the wife of L. B.) $400 in 1937, which she had inherited. All these investments with the exception of the $400 of the wife, Harriet, were made upon the same terms as the original investments or loans heretofore described. Harriet's $400 was turned over to L. B. without any understanding that interest was to be paid on it. After the liquidation of the corporation the business operated under the name L. B. Hartz Stores by L. B. There is evidence that family conferences were held at intervals ranging from two or three weeks to three or four months concerning the operation of the business from the time of the purchase of the original store, through the existence of the corporation, and thereafter. These conferences appear to have been informal and of the nature of "family councils" rather than more formal business conferences. L. B. was undoubtedly the managing head and active director of the business at all times. After L. B. and Harriet Hartz were married in 1936, Harriet assisted in the operation of the stores, entertained business associates, tested food samples and, according to the testimony of L. B., performed many of the same duties he performed in the operation of the business.

From the date of the dissolution of the corporation in 1937 until 1941 the business was conducted as if owned by L. B. Income was reported and taxes paid upon the basis of it being his individual income.[1] The growth of the business is shown by the gross sales, net income and net worth found by the Tax Court for the years 1935 to 1941, inclusive, as follows:

"The gross sales and net income of the L. B. Hartz Stores, for the years indicated are as follows:

| Year | Gross Sales | Net Income |
|------|-------------|------------|
| 1935 | $ 608,900.59 | $ 7,695.49 |
| 1936 | 841,568.62 | 19,444.73 |
| 1937 | 977,168.98 | 18,036.99 |
| 1938 | 1,030,439.10 | 19,900.09 |
| 1939 | 1,284,955.40 | 24,437.05 |
| 1940 | 1,678,829.82 | 36,856.41 |
| 1941 | 2,298,563.04 | 69,906.20 |

The net worth of the business at the close of the various years was as follows: 1937—$87,236.99; 1938—$105,140.69; 1939—$126,590.56; 1940—$152,530.29; 1941—$234,019.52; 1942—$269,718.20."

In the latter part of 1940 the problem of obtaining adequate banking credit for sufficient operating capital became acute. At that time the business was operating a chain of approximately 105 stores in Minnesota and North Dakota and owned and operated an additional three. Banking credit had been obtained from local banks in the communities where the stores were located. Those banks at the instance of the Minnesota State banking authorities were objecting to continuing even the existing line of credit then being extended. One bank reduced its line of credit from $40,000 to $20,000. Those objections to the extent of the bank credit were upon the ground that the business was too much a "one man" business. Late in the year 1940 there was a family conference at which it was agreed that a formal partnership would be formed. Under date of January 2, 1941, a written partnership agreement

---

[1] A partnership return was filed for the year 1939 in the name of L. B. and Harriet as partners showing each as the owner of a 50% interest in the partnership, but this was conceded to have been an error.

was executed.[2] By that agreement the business was to be conducted under the partnership name, style and firm of "L. B. Hartz Stores", the partnership was to commence on the 2nd day of January, 1941, and continue until dissolved, each partner was to have free access to all books and accounts of the partnership, each partner agreed to enter in the books of the partnership all receipts, charges, withdrawals and other financial transactions involving any of the money or other property belonging to the partnership together with explanatory particulars with reference thereto, L. B. Hartz was to devote his full time and energy to the conduct of the business, the other partners were not required to devote their full time to the business but were required to devote such of their time as was necessary for the proper management and operation of the partnership, a salary was to be paid L. B. Hartz if agreed upon by all the partners, the partnership assumed all of the debts and obligations of L. B. Hartz doing business as L. B. Hartz Stores, all profits and losses and the ownership of all the property of the partnership were to be shared by the partners and divided as follows: 25% to L. B. Hartz; 25% to Miss Louise K. Hartz; 15% to B. J. Hartz; 15% to Mrs. L. K. Hartz; and 20% to Harriet L. Hartz.

The foregoing percentage interests of the partners in the partnership were established in the following manner. As heretofore noted the net worth of the business at the time of the establishment of the partnership was $152,530.29. The business was treated as being wholly owned by L. B. Hartz. To establish the 25% interest of Miss Louise K. Hartz which had a stated value of $38,132.57, a bill of sale was executed by L. B. Hartz to her for a 15% interest valued at $22,879.54 in consideration of the $6,500 she then had in the business and the payment of the balance at the rate of $1,500 per year with interest on that balance at three percent. An assignment was made by L. B. Hartz to Louise for the other ten percent interest, which was valued at $15,253.03.

The 15% interest of B. J. Hartz was established by a bill of sale from L. B. Hartz to him of a 2% interest valued at $3,050.60 in consideration of the $300 he had put into the business in 1925 and the $1,000 he had invested in 1938 and the payment of the balance within one year. An assignment was made by L. B. Hartz to B. J. Hartz of a 13% interest valued at $19,828.94.

The 15% interest of Mrs. L. K. Hartz was established by a bill of sale from L. B. to her for a .075% interest valued at $1,143.47 in consideration of $1,000 she had invested in the business in 1937 and the payment of the balance of $143.47 within one year. An assignment was made by L. B. to her for the remaining 14.025% interest valued at $21,735.57.

The 20% interest of Harriet L. Hartz was established by an assignment to her from L. B. Hartz of a 20% interest valued at $30,506.07.

Although L. B. Hartz testified that he did not consider the assignments as gifts he filed a gift tax return reporting all of the assignments as gifts and paid the gift taxes thereon.

At the time of the agreement to establish the partnership in the latter part of 1940 and at the time the partnership agreement was dated, January 2, 1941, Miss Louise K. Hartz had a financial net worth aside from any interest in the business of about $23,000. As of the same dates B. J. Hartz had a financial net worth, aside from any interest in the business, of between $20,000 and $25,000.

A "Certificate of Business Name" was executed by the partnership. Although it was not formally filed until July 17, 1943, there is no uncertainty concerning the fact that the parties held themselves out to the public as partners and that the existence of the partnership was well known to the public. In fact two actions were instituted in the United States District Court in Minnesota prior to the date of the filing of the certificate, one by the Office of Price Administration, the other by the Wage and Hour Administration, in both of which the business was stated to be a partnership and

2 Although bearing that date the record indicates the agreement was not actually signed until later in the year 1941.

the partners sued as such. In December, 1941, the partners all executed a $50,000 guaranty agreement by which each pledged their separate estates as well as their interest in the partnership to a Minneapolis Bank to obtain a line of credit for that amount with that bank. Subsequently, on June 12, 1942, the guaranty agreement and the credit were increased to $100,000. Again, on December 3, 1942, the guaranty agreement and the credit were increased to $125,000. The vice-president of that bank, who testified, stated that the fact that the business was a partnership with each of the partners "willing to pay the company's debts" strengthened very materially the credit of the business. There was some participation by the members of the partnership, other than L. B. Hartz, in the direction and management of the business. That consisted largely of advice and suggestions given at family conferences. In addition thereto Harriet continued the services she had rendered prior to the partnership agreement. The only withdrawal of funds from the partnership in 1941 was $2,995.06 withdrawn by L. B. Hartz. For the year 1942 L. B. Hartz withdrew $13,-559.88, Miss Louise, $6,179.83, B. J. Hartz, $2,170.15, Mrs. L. K. Hartz, $2,116.01, and Harriet, $3,940.10. There was no breakdown of the total amount withdrawn by the partners in 1942 to show how much each partner received after deducting income taxes, insurance premiums and donations made through the business. For the years subsequent to 1942 the withdrawals of each partner after making the foregoing deductions were as follows:

Hartz owed on his bill of sale he paid $300 in 1941 and $1,000 in 1942, leaving a balanc of $450.60 unpaid. Of the balance of $16,379.54 owed by Miss Louise K. Hartz on her bill of sale she has paid $9,000 to the business since 1941 at dates not shown.

Basing its action in this case on its opinion in the case of Claire L. Canfield, 7 T.C. 944, the Tax Court disregarded the partnership and, after making an allowance of $500 per month as a reasonable salary for the services of L. B. Hartz and allocating $8,800 [3]/152,530.29 of the total income for the year 1941 to Miss Louise, Mrs. L. K. and Mr. B. J. Hartz, assessed the remaining $143,730.29/152,530.29 of the $36,856.41 income for that year to L. B. Hartz.

▪ Respondent aptly states the first and most important question—"whether a bona fide partnership composed of the taxpayer [L. B. Hartz] and members of his family did in fact exist during the year involved within the meaning of the income tax statutes as interpreted by the courts". That a valid partnership may have existed for other purposes is not controlling. Doll v. Commissioner of Internal Revenue, 8 Cir., 149 F.2d 239. The Tax Court in reaching its conclusion that there was no valid partnership applied the rule enunciated by the Supreme Court in Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, and Lusthaus v. Commissioner of Internal Revenue, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. In the Tower case [327 U.S. 280, 66 S.Ct. 534] the Supreme Court

|  | 1943 | 1944 | 1945 |
|---|---|---|---|
| L. B. Hartz | $1,813.49 | $1,886.85 | $1,932.83 |
| Miss Louise K. Hartz | None | 750.00 | 1,800.00 |
| Bernard J. Hartz | None | 250.00 | 600.00 |
| Mrs. Louis K. Hartz | None | 250.00 | 600.00 |
| Harriet L. Hartz | None | None | 177.50 |

No salary appears to have been paid L. B. Hartz. It does not appear that Mrs. L. K. Hartz has paid the balance of $143.-47 due from her under her bill of sale. Of the balance of $1,750.60 which B. J.

held that the facts were sufficient to support the Tax Court's finding that "there was no real partnership between petitioner and his wife for purposes of carrying on a business enterprise". The court went on

[3] The total cash investments made by Miss Louise, B. J. and Mrs. L. K. Hartz prior to the partnership agreement of January 2, 1941.

to say in that case that—"A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' * * * We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes." Further, the court said—"There can be no question that a wife and a husband may under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S C.A.Int.Rev.Code, §§ 181, 182." In the Lusthaus case the court found that the evidence supported the Tax Court's finding that the partnership arrangement was merely superficial. From these cases and the many other reported cases on the subject we understand the rule to be that if the facts disclose a real bona fide partnership, it may not be disregarded for tax purposes. We recognize the admonition that attempts to escape taxes by dividing one earned income into two or more through the device of family partnerships have recently created an acute problem. Commissioner v. Tower, supra, 327 U.S. loc. cit. 284, 66 S.Ct. 532, 90 L.Ed. 670, 164 A. L.R. 1135. We adhere to the rule stated by this court in Doll v. Commissioner, supra, that special scrutiny must be given to alleged family partnership arrangements.

We accord to the findings of the Tax Court the high respect to which that court's findings are entitled.[4] But we cannot find justification or factual support in this record for the conclusion that a bona fide partnership was not in good faith created by the parties to the agreement of January 2, 1941. And in reaching that conclusion our difference with the Tax Court is not that the facts found by it were not supported by the evidence. Our difference arises from a failure by the Tax Court to find and give due deference to the uncontroverted evidence that this partnership was created in good faith for the purpose of obtaining necessary working capital to insure the continued existence of the business. We find no justification for a conclusion that this was a sham or a device to avoid the payment of taxes. Concluding, as we have, that this record compels the conclusion that this was a valid partnership, the Tax Court had no right to re-apportion the income of the partnership between the partners for tax purposes. In so holding we do not mean to say that a division of income between alleged partners must necessarily be adhered to for tax purposes merely because it is written into an alleged partnership agreement. If such a division is artificial and unwarranted for want of good faith or absence of proper reasons therefor, that fact might constitute sufficient ground for a finding that the alleged partnership was a sham or a device to avoid the payment of taxes. In this case there was ample justification for the assignments because of the financial support given to the business by Miss Louise, B. J. and Mrs. L. K. Hartz through the critical periods of the business's development, and the services of Harriet Hartz which were concededly greater than those ordinarily rendered by a wife in her husband's business. Where the personal services of the members of the partnership, other than L. B. Hartz, may not have been sufficient to justify a finding that there was a valid partnership, that fact should not be permitted to destroy a partnership properly established on other adequate grounds.

4 See Section 36 of Public Law 773, 80th Congress, 2d Session (H. R. 3214) approved June 25, 1948, and effective September 1, 1948, amending section 1141(a), I.R.C., 26 U.S.C.A. § 1141(a).

The decision of the Tax Court is reversed and the cause is remanded to the Tax Court for recomputation of the tax in conformity with this opinion.