## WALSH v. COMMISSIONER OF INTERNAL REVENUE.

## WALSH'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 13700, 13701.

United States Court of Appeals Eighth Circuit.

Nov. 12, 1948.

Daniel J. Gross, Harold W. Kauffman, and Joseph J. Vinardi of Gross & Welch, all of Omaha, Neb., for petitioner.

Lamar Caudle, Asst. Atty. Gen., Harry Marselli, George A. Stinson, Ellis N. Slack, and Fred E. Youngman, Sp. Assts. to Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, of Washington, D. C., for respondent.

Before THOMAS, RIDDICK, and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

These cases come to this court on two separate petitions to review unreported decisions of the United States Tax Court, redetermining deficiencies in federal income taxes against Thomas A. Walsh, Jr., and his mother, Mary P. Walsh, deceased, for the taxable year 1943. The cases, consolidated for hearing before the Tax Court, are presented on a single record. Since they depend upon the same basic facts and are controlled by the same principles of law they may be disposed of in one opinion.

The only question presented is whether, upon the record, the Tax Court erred in holding that the income of the business operated under the name Thomas A. Walsh Manufacturing Company for the year 1943 is taxable one-third to Thomas A. Walsh, Jr., and two-thirds to Mary P. Walsh under § 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a). The answer to this question depends upon whether, for income tax purposes, a valid partnership existed during the taxable year among Mary P. Walsh, her son, Thomas A. Walsh, Jr., his wife, Marjorie C. Walsh, and his minor daughter, Mary M. Walsh, by her guardian, entitling each of them to one-fourth of such income taxable under §§ 181 and 182 of the Internal Revenue Code, 26 U.S.C.A. §§ 181, 182. Income tax returns were made and the taxes were paid on the latter theory.

In No. 13,700 the Commissioner had asserted a deficiency of $6,116.98 in the income tax of Thomas A. Walsh, Jr., for the taxable year, and the Tax Court held that he was liable for a deficiency of $2,275.14. In No. 13,701 a deficiency of $9,876.39 was claimed by the Commissioner and the Tax Court held that the petitioner, Mary P. Walsh, was liable in the amount of $14,592.66. The decision in No. 13,701 was based on the theory that no partnership existed during the taxable year and that Mrs. Walsh was taxable upon the entire income of the business less one-third thereof payable to Tom either as reasonable compensation for his services as manager for that year or as a partner of his mother under an oral agreement made in 1942.

The contentions of the parties require consideration of the business that produced the income and the relations of the parties engaged in that business.

The Thomas A. Walsh Manufacturing Company was and is a family institution. The name is a trade name for the business of making and selling punchboards used for advertising purposes principally in tobacco and candy stores. The business was commenced by Thomas A. Walsh, Sr., and his wife, Mary P. Walsh, in Omaha, Nebraska,

in 1913. In that year they began business in a small way in their apartment. From the first he attended to the selling of the product and she to the manufacturing thereof and to running the office. The business grew slowly, but eventually their wares were sold throughout most of the United States. Twice they moved into larger quarters but continued to carry on under the same plan, that is, she designed the punchboards, managed the manufacturing and ran the office, while he had charge of selling the product.

In addition to their meager savings invested in the business in 1913, Mrs. Walsh contributed $3,000 which she thereafter inherited. Both worked, and they kept but one bank account. They treated the business as a joint or family enterprise in which they were both equally interested as owners. This attitude was not changed even though the business was incorporated from 1929 until 1941 and 249 shares of the stock were issued to Mrs. Walsh and one share only to Mr. Walsh.

Thomas A. Walsh, Jr., was born in 1920. He became familiar with the business by performing various services for his parents when not in school. In 1941, while he was a law student at Notre Dame University, his father was suffering from high blood pressure and a heart ailment. His doctors constantly advised him to do less work. He did not tell Mrs. Walsh of the seriousness of his condition. However, he did tell his son Tom the situation, and he told Tom that if he would come home and help with the business after his graduation from law school the corporation then in existence would be dissolved and a limited partnership would be formed with Tom as a partner. Tom agreed, and on June 1, 1941, a partnership agreement was entered into with Thomas A. Walsh, Sr., as the general partner and Mrs. Walsh and Tom as the limited partners. The general partner was to have full power to manage the business, but each partner was to receive one-third of the profits. Late in the summer his father's health improved and Tom returned to school in December, 1941, to finish his law course.

On February 24, 1942, Thomas A. Walsh, Sr., suddenly died leaving a will executed in the preceding month in which he named Mrs. Walsh as sole beneficiary. The will provided:

"I give, bequeath and devise to my wife, Mary P. Walsh, all my property, real, personal, or mixed, of whatever nature and wherever situate.

*   *   *   *   *   *

"I express as my earnest wish and desire, by which I trust my aforesaid wife and son will abide, that if I shall die leaving my aforesaid wife and son living, and if, thereafter, my wife and son shall engage jointly in any business enterprise wherein assets bequeathed by this testament be used, that in such event the profits or income of such business shall be shared two-thirds ($\frac{2}{3}$) by my said wife, and one-third ($\frac{1}{3}$) by my aforesaid son."

The will was probated in the County Court of Douglas County, Nebraska, and Mrs. Walsh was appointed executrix as provided in the will.

Tom did not return to school after his father's death but devoted all of his time to the business under an oral arrangement with his mother by the terms of which he was to receive one-third of the profits and his mother two-thirds in accordance with the expressed testamentary wish of Thomas A. Walsh, Sr.

After Mr. Walsh's death Mrs. Walsh suffered a nervous breakdown, and her health was such thereafter that she was prevented from taking any active part in the business. She died on February 1, 1947, and Tom having been appointed executor of her estate was substituted as petitioner in No. 13,701 herein.

In the probate proceeding in Mr. Walsh's estate all of the property of the Thomas A. Walsh Manufacturing Company was listed as his property, and by the terms of his will title passed to Mrs. Walsh.

During the summer of 1942, and prior to the closing of Mr. Walsh's estate in the probate court, Mrs. Walsh, being in failing health, considered how she would dispose of her property. After telling her son Tom what she had in mind and after consulting with two lawyers, and without any thought of tax consequences, she decided to proceed with the plan which she

had conceived. Accordingly, on December 15, 1942, the day before final distribution of Mr. Walsh's estate, she executed and filed in the probate court irrevocable assignments, effective as of September 30, 1942, conveying one-fourth of the assets and business of the Thomas A. Walsh Manufacturing Company to Thomas A. Walsh, Jr., one-fourth to his wife, Marjorie C. Walsh, and one-fourth to his minor daughter, Mary M. Walsh. Gift tax returns were filed, but no gift taxes were assessed or paid. On December 16, 1942, the gifts were approved by the probate court. Thomas A. Walsh, Jr., was appointed guardian of the minor's interest, and thereafter her property was handled under the jurisdiction of the court.

Tom and his mother contemplated the operation of the business as a partnership as early as September 30, 1942; and the assignments of December 15, 1942, were by their terms made effective as of that date. A written partnership agreement was not executed, however, until March 10, 1943, and approved by the probate court for the guardian on March 31, 1942. This agreement by its terms also related back to September 30, 1942, and all distributions of profits were made as commencing with that date.

The Tax Court found that:

"The evidence is that in making the assignments Mrs. Walsh intended to make gifts to each of the assignees of an undivided one-fourth interest in the assets and business of the Thomas A. Walsh Manufacturing Company. The primary purpose of these gifts, we think, was to make it possible for her and the others to conduct the business as a partnership and to share the profits * * *"

The court then proceeded:

"Neither Tom's wife nor his infant daughter ever performed any services or contributed any new capital to the business. Their right to participate as partners depended entirely upon their contributions of the one-fourth undivided interests in the assets which Mrs. Walsh had assigned to them. Under the decisions of the Supreme Court in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164

A.L.R. 1135, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, that did not qualify them as business partners.

"Whether or not this was merely an arrangement for tax savings, in so far as it related to Marjorie C. Walsh and her daughter, it was in essence no more than an assignment to them of a share in the future earnings of the business."

And, finally, the court held that "the evidence requires an allocation of the income in question between Mrs Walsh and Tom. A proper allocation, we think, would be two-thirds to Mrs. Walsh and one-third to Tom. Certainly Tom's services were worth no less to the business after Mrs. Walsh undertook to assign him a one-fourth interest in the assets than before."

■ The evidentiary facts pertinent to the decision under review are not in dispute. The question is whether the Tax Court correctly applied the law to those facts. The court's decision that no partnership for tax purposes existed in 1943 is based upon the fact that Tom's wife and minor daughter contributed no services to the business and that their capital investments were gifts from Mrs. Walsh, Sr. The court concluded that this result was required by the decisions of the Supreme Court in the Tower and Lusthaus cases, supra. In so holding we think the court erred. The effect of the decision is that both Tom and his mother are required to pay taxes upon income which they did not receive and to which they had neither a contractual nor a legal right. This is true although neither Tom nor his mother had devised or entered into the partnership for the purpose of reducing their taxes to the detriment of the government. Suppose Mrs. Walsh had died in 1942, after the death of her husband and the probate of his will bequeathing to Tom, to his wife and to his daughter the same share in the Manufacturing Company which she gave them prior to her death; and suppose that to carry on that enterprise as a going business they had entered into a partnership contract including the identical agreements found in the contract involved here, no one would say that the partnership was invalid for tax purposes or that Tom's wife and daugh-

ter, although they contributed no services, were not entitled to share in the profits or that they should not be taxed for the share of the profits which they received.

There is no basis in the evidence to support the holding that the conveyance to Tom's wife and daughter "was in essence no more than an assignment to them of a share in the future earnings of the business." Further, such holding is contrary to the finding of the Tax Court that "The primary purpose of these gifts * * * was to make it possible * * * to conduct the business as a partnership and to share the profits." The effect of the partnership contract was to require them to share the losses, also, if any.

Since the facts upon which the decisions of the Supreme Court rest in the cases relied upon by the Tax Court and by the respondent differ materially from the facts in the case at bar, any fair application of the principles stated in those cases requires constant adherence to the familiar rules announced by Chief Justice Marshall:

"'An opinion in a particular case, founded on its special circumstances, is not applicable to cases under circumstances essentially different.' Brooks v. Marbury, 24 U.S. [78, 90], 11 Wheat. 78, 90, 6 L.Ed. 423. And 'general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.' Cohens v. Virginia, 19 U.S. [264; 398, 399], 6 Wheat. 264, 398, 399, 5 L.Ed. 257." Northern Pac. Ry. Co. v. North American Tel. Co., 8 Cir., 230 F. 347, 355, L.R.A.1916E, 572; Id., 8 Cir., 254 F. 417, certiorari denied, 249 U.S. 607, 39 S.Ct. 290, 63 L.Ed. 799.

See and compare, also, Osaka Shosen Kaisha Line v. United States, 300 U.S. 98, 103, 57 S.Ct. 356, 81 L.Ed. 532, and Safe Deposit & Trust Co. v. Virginia, 280 U.S. 83, 94, 50 S.Ct. 59, 74 L.Ed. 180, 67 A.L.R. 386.

Applying these rules to the Tower and Lusthaus cases, we observe that both those cases involved husband and wife partnerships in the husband's business wherein the wives rendered no services and contributed only capital furnished by the husbands. Further, it was apparent in both cases that the alleged partnerships were not entered into for the purpose of sharing the profits or losses of the business but for the purpose of reducing the husband's income taxes. In each case the attempt was made to multiply one economic unit into two units for tax purposes only.

In the Tower case, 327 U.S. at page 290, 66 S.Ct. at page 537, 90 L.Ed. 670, 164 A.L.R. 1135, the Supreme Court said:

"There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes.. If she *either* invests capital originating with her *or* substantially contributes to the control and management of the business, *or* otherwise performs vital additional services, *or* does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A. §§ 181, 182." (Emphasis supplied.)

The instant cases are not, of course, a husband and wife arrangement. Marjorie C. Walsh and her daughter were not members of Mary P. Walsh's immediate family. Neither the donor nor the donees contributed to, nor was either responsible for, the support of the other. There were no restrictions in the assignments. In so far as the partnership was concerned, each of its members invested his or her own capital. In such a case "The crucial question," as said in Commissioner v. Sunnen, 333 U.S. 591, 604, 68 S.Ct. 715, 722, is "whether the assignor retains sufficient power and control over the assigned property or over the receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes." Here the assignor retained no power or control over either the assigned property or the receipt of the income. She received no benefit directly or indirectly from the income from the assigned property. There was no reasonable basis, therefore, either in law or in the evidence, for ignoring the contract of the partners.

540

Here the evidence supports no conclusion other than that the "partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both." Commissioner v. Tower, 327 U.S. at page 287, 66 S.Ct. at page 536, 90 L.Ed. 670, 164 A.L.R. 1135.

In view of the fact that every case must depend upon its own facts, and in view of the large number of opinions in this class of cases now being decided by the courts, we feel that it is unnecessary to extend this opinion with an analysis of other cases.

The courts, in reliance upon the decisions of the Supreme Court, hold generally that a good faith partnership not designed for the purpose of channeling the income of one of the partners to other members of his family is valid for tax purposes; and that it is not essential that all members of the partnership shall have contributed services; it is necessary only that each member must in good faith have contributed *either* capital *or* services *or* both, as declared in the Tower case, supra.

For some recent cases sustaining the validity of family partnerships for tax purposes and reversing the Tax Court, see Kent v. Commissioner, 6 Cir., 170 F.2d 131; Culbertson v. Commissioner, 5 Cir., 168 F.2d 979; Canfield v. Commissioner, 6 Cir., 168 F.2d 907; Woosley v. Commissioner, 6 Cir., 168 F.2d 330; Weizer v. Commissioner, 6 Cir., 165 F.2d 772; Lawton v. Commissioner, 6 Cir., 164 F.2d 380; Wilson v. Commissioner, 7 Cir., 161 F.2d 661; Durwood v. Commissioner, 8 Cir., 159 F.2d 400; Hartz v. Commissioner, 8 Cir., 170 F.2d 313 and for appeals from district courts sustaining family partnership contracts see: Allen v. Knott, 5 Cir., 166 F.2d 798; Arnold v. Schepps, 5 Cir., 166 F.2d 821. Recent cases in this court affirming decisions of the Tax Court holding such partnerships invalid for tax purposes are: Kohl v. Commissioner, 8 Cir., 170 F.2d 531; Supornick v. Commissioner, 8 Cir., 150 F.2d 110; and Doll v. Commissioner, 8 Cir., 149 F.2d 239.

For the reasons stated above the decision of the Tax Court is reversed.